UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT COURT OF OHIO
EASTERN DIVISION

**PETLAND, INC.,**

       **Plaintiff,**                          Case No. 2:04-cv-224
                                                     JUDGE GREGORY L. FROST
       v.                                       Magistrate Judge Terence P. Kemp

**CHARLES GREGORY HENDRIX, et al.,**

       **Defendants.**

**OPINION AND ORDER**

This matter is before the Court for consideration of a motion for summary judgment filed by Petland, Incorporated (Doc. # 67) with a supporting memorandum (Doc. # 68), a memorandum in opposition filed by Defendants, Brazos Bottom Farms, Incorporated, Charles Gregory Hendrix, and Jennifer Ann Hendrix (Doc.# 70), and a reply memorandum filed by Petland (Doc. # 71).  Also before the Court is Petland's motion for leave to file the reply memorandum (Doc. # 72), a response filed by Defendants (Doc. # 73), Petland's response to that response (Doc. # 74), and yet another response by Defendants (Doc. # 75).  For the reasons that follow, the Court **DENIES** as moot the motion for leave to file the reply memorandum (Doc. # 72) and **GRANTS IN PART** the motion for summary judgment (Doc. # 67).

**I. Background**

This case involves franchise agreements between Petland, Inc. ("Petland") and Defendants Brazos Bottom Farms, Inc., Charles Gregory Hendrix, and Jennifer Ann Hendrix.[1]

---

[1] Both Petland and Defendants also brought Ohio and Texas state court actions that the parties apparently settled in part by agreeing to litigate the majority of their claims in this federal forum.

1

Beginning in 2000, Petland franchised two Petland stores to the Hendrixes. The Hendrixes opened the first store, located in Stafford, Texas, in October 2001.[2] They later opened a second store in Missouri City, Texas, in 2002. The stores did not prove profitable, and Defendants eventually fell behind in making required royalty payments to Petland.

By January 2003, the franchisor-franchisee relationship had deteriorated to the point that Petland filed a collection action in Texas state court. Then, on July 25, 2003, Petland terminated its contracts with Defendants due to their alleged failure to pay the full amount of gross proceeds and provide Petland with the requisite financial reports. Defendants, who assert that they did not understand that the termination meant they had to cease operations, initially continued operating under the Petland name. Defendants later took steps to disassociate themselves from Petland. Although the parties dispute the timing and effectiveness of that disassociation, it is uncontroverted that Defendants continued to operate the Stafford pet store until its sale in June 2005.[3]

Petland asserts that this continued operation contravened a non-compete provision contained within the Franchise Agreement. This section, titled "Prohibition Against Competition," provides in pertinent part:

> B. Post-Term Covenant. If: (1) this Agreement expires without renewal or (2) prior to its expiration the Franchise is terminated by Company in accordance with the provisions of this Agreement ... then Franchisee agrees that for a period of two (2) years, commencing on the effective date of ... termination ... Franchisee will not have any interest as an owner, investor, partner, director, officer, employee, consultant, lender, lessor, representative or agent, or in any

---

[2] The Hendrixes later assigned this store to Defendant Brazos, a corporation they own of which Jennifer Hendrix is president.

[3] The Missouri City store had earlier ceased operation in June 2003.

>   other capacity, in any Competitive Business within a radius of fifteen (15) miles of the outer boundaries of Franchisee's Territory ... .
>
>   C. To the extent that any provision of this Section 17 is deemed unenforceable by virtue of its scope in terms of the area, business activity prohibited and/or length of time, but could be enforceable by reducing any or all thereof, Franchisee and Company agree that same shall be enforced to the fullest extent permissible under the laws and public policies applied in the jurisdiction in which enforcement is sought.

(November 13, 2000 Franchise Agreement § 17, at 26-27.)

On March 23, 2004, Petland initiated the instant action by filing a ten-count Complaint for trademark infringement in violation of 15 U.S.C. § 1114(1), unfair competition in violation of 15 U.S.C. § 1125(a), dilution in violation of 15 U.S.C. § 1125(c), common law trademark infringement, common law unfair competition, common law misappropriation, enforcement of non-compete clause, breach of two franchise agreements, and declaratory judgment as to the date of termination of each franchise agreement and Defendants' obligations thereunder. (Doc. # 1.) Petland later amended its pleading to add claims for failure to cancel assumed names in violation of the franchise agreements and the Lanham Act, misappropriation of trade secrets in violation of Ohio Rev. Code § 1333.61 *et seq.*, and violation of the franchise agreements and a state court judgment entry. (Doc. # 21, Ex. A.)

Previously, Petland moved for injunctive relief to preclude the continued operation of the Stafford store. (Doc. # 2.) Defendants responded by filing a subsequently withdrawn motion to dismiss and an Answer (since amended) in which they asserted counterclaims for negligent misrepresentation, fraud, and breach of contract; negligence; unfair and deceptive practices in violation of federal and Ohio law; and fraudulent misrepresentation. (Docs. # 10, 11.) In an amended pleading, they also seek declaratory judgment on the parties' rights and obligations

3

under the Ohio state court judgment entry. (Doc. # 29.)

Following various delays, the Court held a preliminary injunction hearing on July 8 and 9, 2004, and after permitting additional briefing, the Court granted Petland's motion for a preliminary injunction on September 14, 2004. (Doc. # 55.) The Court conditioned the injunction upon the posting of a bond in the amount of $1,500,000, but the record fails to reflect that Petland posted a bond in this amount.

On January 25, 2005, Petland moved for partial summary judgment on its various claims and Defendants' counterclaims. (Doc. # 67.) In connection with related briefing on this motion, Petland later filed a motion for leave to file a reply memorandum. (Doc. # 72.) The parties have fully briefed these motions, and both motions are now ripe for disposition.

## II. Motion for Leave to File Reply

Petland filed its motion for summary judgment on January 25, 2005. (Doc. # 67.) Defendants then had twenty-four days in which to file a memorandum in opposition. *See* Fed. R. Civ. P. 6(e); S.D. Ohio Civ. R. 7.2(a)(2). The docket indicates that Defendants filed that document on February 16, 2005, within the filing period. Accordingly, Petland had fourteen days in which to file any reply memorandum. *See* Fed. R. Civ. P. 6(e); S.D. Ohio Civ. R. 7.2(a)(2). By filing their reply on February 28, 2005, Petland met the filing deadline. The Court therefore **DENIES** as moot Petland's February 28, 2005 motion for leave to file the reply memorandum. (Doc. # 72.)

The Court notes that after the filing of the reply memorandum, the parties apparently dropped all pretense of adhering to the Court's Local Civil Rules. Those rules provide that after service and filing of a reply memorandum, "[n]o additional memoranda beyond those

4

enumerated will be permitted, except upon leave of court for good cause shown." S.D. Ohio Civ. R. 7.2(a)(2). Here, Defendants filed a March 2, 2005 "Response to Plaintiff's Motion for Leave to File Reply in Support of Motion for Partial Summary Judgment" (Doc. # 73), but rather than serving as a memorandum in opposition to the moot motion for leave to file, the document ignores whether good cause exists for granting the motion and instead addresses the merits of various summary judgment issues. It is therefore an impermissible filing. Similarly, rather than serving as a reply to a memorandum in opposition, Plaintiff's March 3, 2005 "Surreply in Support of Motion for Partial Summary Judgment" curiously targets the merits of the summary judgment motion. (Doc. #74.) Compounding the runaway briefing, Defendants then filed a March 4, 2005 "Surresponse in Support of Response to Plaintiff's Motion for Partial Summary Judgment" that is not permitted by any reading of the Local Civil Rules. (Doc. # 75.)

The Court is bewildered by the parties' unabashed ignorance of (or ignoring of) the Local Civil Rules. It should be understood that counsel for the respective parties must follow the relevant rules of procedure when practicing in this or any other court. Despite counsel's failure to do so here, the Court nonetheless declines to strike the foregoing filings *sua sponte*. The Court does, however, warn the parties that any future failure to adhere to the Court's deadlines and procedures will not receive such unwarranted leniency.

### III. Motion for Partial Summary Judgment

#### A. Standard Involved

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Fed. R. Civ. P. 56(c). The Court must therefore grant a motion for summary judgment here if Gregg, the nonmoving party who has the burden of proof at trial, fails to make a showing sufficient to establish the existence of an element that is essential to his case. *See Muncie Power Prods., Inc. v. United Techs. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of Gregg, who must set forth specific facts showing that there is a genuine issue of material fact for trial. *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52.)

**B. Analysis**

Petland moves for summary judgment on Defendants' counterclaims, as well as the following claims: enforcement of the post-termination non-compete clause (Count IX), breach of franchise agreements (Counts X, XI), trademark infringement (Count I), false advertising (Count III), unfair competition (Count IV), common law infringement (Count VI), and common law unfair competition (Count VII). The Court shall address each claim in turn.

***1. Enforcement of the post-termination non-compete clause (Count IX)***

Petland moves for summary judgment on Count IX of the Amended Complaint, seeking to enforce the covenant not to compete set forth in § 17 of the Stafford franchise agreement. Defendants assert a number of theories to attack the agreement provision, including allegations of fraud on the part if Petland.

While the Court was in the course of addressing the parties' arguments, Defendants filed a July 1, 2005 notice indicating that they had sold the Stafford business on or about June 16, 2005. (Doc. # 79.) This led to a July 5, 2005 telephone status conference in which the parties indicated to the Court that they would subsequently discuss the possible effect of this sale on Count IX of the Amended Complaint. The parties also agreed that the Court should hold in abeyance ruling on the summary judgment motion in regard to Count IX. Accordingly, the Court declines to rule on Count IX at this time.

### *2. Breach of franchise agreements (Counts X, XI) & Counterclaims*

In Count X of the Amended Complaint, Petland seeks to recover damages for breach of the Stafford franchise agreement. The company also seeks damages for breach of the Missouri City franchise agreement in Count XI. The damages sought in both claims constitute franchise fees, late fees, service fees and interest, and early termination damages contemplated by § 16(I)(4) of the franchise agreements.

In moving for summary judgment on these claims, Petland references the affidavit testimony of Dale Davis. (Doc. # 68, at 5.) Davis states in this affidavit, attached to the motion for summary judgment, that "[t]o the best of my personal knowledge, all fact assertions in that motion are true and correct, and were supported by evidence presented by Petland at the hearing on July 8-9, 2004." (Doc. # 67, Davis Aff. at 1 ¶ 2.) He then asserts that the total damages

7

sought equal "$418,832.01 as of December 31, 2003, plus additional interest, and plus attorneys [*sic*] fees." (Doc. # 67, Davis Aff. at 1 ¶ 3.)

This Court need not examine the hearing testimony in this regard because it appears that Defendants concede the validity of the damages sought. In their memorandum in opposition, Defendants do not challenge Petland's figures, stating:

> Defendants acknowledge there is little, if any, dispute as to the terms of the Franchising Agreements, the sequence of events leading up to the execution of the Franchise Agreements, the sequence of events leading up to the termination of the Franchise Agreements, the termination of the Franchise Agreements or the sequence of events which transpired after the Franchise Agreements were terminated. All factual disputes at issue turn on the unconscionable nature of the Franchising Agreements themselves and on Petland's unconscionable, fraudulent and/or negligent conduct in inducing Defendants to enter into the Franchising Agreements. Accordingly, Defendants do not specifically respond to those portions of Plaintiff's Memorandum of Facts and Law in Support of Motion for Partial Summary Judgment to the extent it addresses those issues.

(Doc. # 70, at 9 unnumbered footnote.) Defendants therefore rely solely upon their affirmative defenses and counterclaims to defeat Petland's claim to its unchallenged damages. (Doc. # 70, at 9 ("this dispute turns on Defendants' Affirmative Defenses and counterclaims").) Accordingly, the Court shall proceed to address Defendant's arguments, resolution of which shall in turn prove dispositive of the issue of whether Petland is entitled to judgment as a matter of law on Counts X and XI.

Defendants first assert that the franchise agreements are contracts of adhesion and are thus enforceable. The Court notes that Defendants have presented little argument in this regard. This dearth of argument renders addressing Defendants' theory challenging. Although the Court desires to address fully all the issues presented, the Court cannot fairly accept a mere unsupported conclusion as presenting an actual argument. To the extent that Defendants have

presented an argument supporting its claim of adhesion that complies with Fed. R. Civ. P. 56 and S.D. Ohio Civ. R. 7.2, then, the Court notes that it previously rejected their prior argument that *Williams v. Aetna Finance Company*, 83 Ohio St. 3d 464, 700 N.E.2d 859 (1998), set forth a rule that franchise agreements are unenforceable contracts of adhesion under Ohio law. If Defendants intend to implicitly reassert their argument,[4] the Court incorporates its prior analysis and again rejects the flawed interpretation of Ohio law.

The second argument Defendants present, construed narrowly, is that because Petland fraudulently *induced* them into entering into the franchise agreements, the agreements should be rescinded. Defendants' premise is that Petland routinely provides franchisees with fraudulently or negligently inflated financial projections that the franchisees use to secure bank loans and then, when the franchisees fail, the company terminates the agreements and pursues severe financial penalties.

To support their assertion of such a damning business model, Defendants direct this Court to several items in the record. Petland challenges Defendants' ability to use some of this evidence, specifically the Stan Michnowicz deposition, as well as challenging Defendants' interpretation of other evidence such as the Gary Fawks affidavit (which the Court agrees curiously supports only a contention that Petland *underestimates* its projections). But this Court need not resolve Defendants' ability to use this evidence, because even assuming *arguendo* that such evidence is admissible–and that inducement is at that is involved here–the disputed

---

[4] Defendants do not make this argument explicitly, but do cite to *Williams* in their memorandum in opposition. (Doc. # 70, at 10.)

evidence would not defeat Petland's entitlement to judgment on Counts X and XI.[5]

The Court reaches this conclusion because even if Petland presented Defendants with unconscionable and/or inflated numbers, these projections could not have induced Defendants to enter into the franchise agreements. The evidence indicates that Charles and Jennifer Hendrix entered into the Stafford franchise agreement in November 2000, prior to the preparation of the purportedly dubious business plan. (Pls.' Ex. 1.) The Missouri City operation follows such sequencing. Thus, despite the fact that the projections for both stores fell far short of the actual revenue realized, the projections could not as a matter of logic have induced Defendants into entering into the November 2000 and April 2001 franchise agreements that predated the creation of the business plans. Echoing the Court's conclusion in regard to the preliminary injunction proceeding, no reasonable factfinder could conclude based on the evidence presented that Petland fraudulently or negligently *induced* Defendants into becoming franchisees.

This is not to say, however, that no fraud or other improper conduct does not exist and survives summary judgment. A charitable reading of Defendants' arguments reveals an implicit contention that the impropriety of which they complain constitutes fraud or negligence in the *performance* of–as opposed to simply the *inducement* to enter into–the franchise agreements.[6]

---

[5] Because the Court considers the issues involved both with and without the Michnowicz deposition, Defendants' alternative Fed. R. Civ. P. 56(f) request is moot. (Doc. # 70, at 6, unnumbered footnote.) For purposes of the record, the Court notes that Defendants have complied with the previous show cause order in regard to the missing deposition pages and court reporter certification. (Docs. # 78, 80.)

[6] The Court notes that Petland in fact recognizes the two-pronged nature of Defendants' argument, describing the issues in its reply memorandum as "whether Petland committed fraud or misrepresentation against Hendrix in connection with the sale of franchises to Hendrix, or in connection with the post-sale preparation of the Hendrix business plans." (Doc. # 71, at 4.)

Under such a theory, Defendants' counterclaims contemplate recision of the franchise agreements, which in turn would serve to vitiate the liability contemplated in Counts X and XI of the Amended Complaint. Thus, although no reasonable factfinder could conclude that Petland's allegedly improper conduct persuaded Defendants to become franchisees, the Court must explore whether a reasonable factfinder could determine that Defendants' allegations of impropriety, if true, constituted an unapproved breach of the agreements.

There is a dispute over the existence of fraudulent or negligent conduct by Petland. Charles Hendrix testified that Petland's Jim Whitman admitted that Petland made the projection numbers "look good so that you can get the loan." (Hearing Tr. at 120.) Whitman denied that he ever made such a statement or engaged in such conduct. (Hearing Tr. at 261-62.) Hendrix also testified that Petland's Mark Colley made a similar admission (Hearing Tr. at 146-47), but, as Petland again notes, other evidence potentially undercuts this testimony. Even excluding for present purposes the Michnowicz deposition, the Court concludes that the remaining evidence presents a factual dispute as to whether Petland fraudulently or negligently breached the franchise agreement.

The existence of a factual dispute does not prove dispositive of the summary judgment motion, however. Charles Hendrix testified that he spoke with Petland's Whitman in "either December of '01 or January of '02" when Whitman allegedly admitted that Petland fixed its business plan projections. (Hearing Tr. at 145.) Assuming *arguendo* that this testimony is correct, *then even by Defendants' own version of the evidence*, Defendants continued to operate the Stafford store and elected to open the Missouri City store well after evidence of Petland's impropriety had allegedly been uncovered. *See American Nursing Care of Toledo, Inc. v.*

11

*Leisure*, 609 F. Supp. 419, 427-28 (N.D. Ohio 1984) (holding that under Ohio law, franchisee's adherence to contract and opening of second franchise subsequent to discovery of fraud constituted waiver or ratification of fraud); *English v. National Cas. Co.*, 138 Ohio St. 166, 169, 34 N.E.2d 31, 33 (1941) ("A party to a contract who, after discovery or knowledge of facts which would entitle him to rescind, treats the contract as a subsisting obligation and leads the other party to believe the contract is still in effect, waives his right to rescind"). The other alleged evidence of fraud is merely cumulative to the purported admission by Whitman and cannot serve to save Defendants' theory of the case. Further, given Charles Hendrix's testimony that he recognized that the business plan was based on an assumption of success and on a franchisee's executing the Petland business model after sufficient training (which Defendants failed to complete), the Court concludes that any reasonable factfinder could only determine that Defendants accepted the expressly optimistic projections.

The Court also recognizes that Defendants' ratification undercuts their claim for unfair/deceptive practices in violation of 16 C.F.R. § 436.1 and 45 U.S.C. § 45 *et seq*. Without needing to reach whether a private cause of action could exist, the Court must conclude that Defendants' conduct precludes such a viable counterclaim. Defendants' state law counterclaim under Ohio Rev. Code Chapter 1334 similarly fails. *See* Ohio Rev. Code § 1334.13. Moreover, it appears that Defendants have possibly elected to waive these counterclaims, in that they disputed only Petland's contention of waiver in regard to the trademark claims, but neglected to mention these claims. (Doc. # 72, at 1-2; Doc. # 75, at 1.)

The Court concludes that Petland is therefore entitled to summary judgment on Counts X, and XI of its Amended Complaint, as well as Defendants' counterclaims. In reaching this

12

conclusion, the Court notes that Defendants do not assert (and in fact do not even address) that the § 16(I)(4) liquidated damages provisions of the franchise agreements create impermissible penalties in contravention of Ohio public policy. *See Lake Ridge Academy v. Carney*, 66 Ohio St. 3d 376, 613 N.E.2d 183 (1993). Accordingly, the Court accepts Defendants' apparent concession to the validity of the amounts claimed.

### 3. Trademark claims (Counts I, III, IV, VI, VII)

In a curiously cursory manner, Petland moves for summary judgment on its claims for trademark infringement (Count I), false advertising (Count III), unfair competition (Count IV), common law infringement (Count VI), and common law unfair competition (Count VII).[7] The company seeks judgment as a matter of law on the issue of liability only, leaving "[t]he questions of whether the violations were willful and extent of damages ... for trial." (Doc. # 68, at 7.) Petland also asserts in its moot motion for leave to file a reply memorandum that Defendants did not respond to this aspect of the summary judgment motion in their memorandum in opposition. (Doc. # 72, at 1-2.)

As noted, Petland asserts a claim of trademark infringement in Count I of the Amended Complaint. This claim rests on 15 U.S.C. § 1114(1), which provides in relevant part:

Any person who shall, without the consent of the registrant --

**(a)** use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

**(b)** reproduce, counterfeit, copy, or colorably imitate a registered mark and apply

---

[7] Petland does not move for summary judgment on its Count V claim for dilution in violation of 15 U.S.C. § 1125(c).

13

> such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,
>
> shall be liable in a civil action by the registrant for the remedies hereinafter provided.

*Id*. The Sixth Circuit had held that "[i]n federal trademark infringement claims under 15 U.S.C. § 1114, the 'touchstone of liability ... is whether the defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties.' " *Allard Enters., Inc. v. Advanced Programming Res., Inc.*, 146 F.3d 350, 355 (6th Cir. 1998) (quoting *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.,* 109 F.3d 275, 280 (6th Cir. 1997)). Inexplicably, Petland does not specify under which statutory provision it proceeds, although it appears that § 1114(1)(a) is at issue. Further, because analysis of the Ohio common law infringement claim tracks the statutory claim, the Court can discuss the related claims together. *ETW Corp. v. Jireh Publ'g, Inc.*, 332 F.3d 915, 920 (6th Cir. 2003); *Interactive Products Corp. v. a2z Mobile Office*, 326 F.3d 687, 694 (6th Cir. 2003).

Petland also asserts a Count III claim for false advertising and a Count IV claim for unfair competition, both in violation of § 43(a) of the Lanham Act. This provision of the Act is codified at 15 U.S.C. § 1125(a), which provides in pertinent part:

> **(1)** Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
>
> **(A)** is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

> **(B)** in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a). Similar to the infringement claims, the federal statute also provides the analytic framework for Petland's Count VII claim for unfair competition under Ohio's common law because courts apply the same basic test. *See ETW Corp.*, 332 F.3d at 920; *Allard Enters., Inc. v. Advanced Programming Res.*, 146 F.3d 350, 354-55 (quoting *Rock & Roll Hall of Fame & Museum, Inc. v. Gentile Prods.*, 134 F.3d 749, 754 (6th Cir. 1998)).

Guided by the foregoing law, the Court turns to the facts of this case. It is undisputed that Petland terminated the Stafford franchise agreement on July 25, 2003. It is also undisputed that Defendants continued to operate the Stafford pet store for nearly two years after that date and that, for a notable period of this operation, they failed to disassociate or de-identify from Petland. In fact, Charles Hendrix testified before this Court in regard to the preliminary injunction proceedings both that Defendants had failed to start the de-identification process until after October 13, 2003 and that the de-identification process had continued beyond May 2004. (Hearing Tr. at 148, 152.) Additional testimony revealed that Defendants continued to use an outdoor "Petland" sign until March 2004, that they sold Petland merchandise at steep discounts, that for an undetermined period of time they continued to operate the Stafford store under the "Petland" name until using "Pets" and eventually becoming known as "The Pet Store," and that although they retained the same phone number, Defendants informed customers that they were formerly Petland. (Hearing Tr. at 149-53.) The foregoing apparently resulted in some confusion to customers as evinced by a November 5, 2003 e-mail complaint Petland received about the

15

Stafford operation, despite the fact that the franchise relationship had concluded. (Plts.' Ex. 5, Planchard E-Mail.)

In light of these facts, two points are necessary. First, Defendants have conceded that they continued to use Petland's marks in various ways well after termination of the Stafford franchise agreement. This resulted in not just a likelihood of confusion, but in at least some degree of actual confusion. No reasonable mind could reach any conclusion other than that such conduct violates the statutory and common law protections at issue. *See Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville,* 670 F.2d 642, 646-47 (6th Cir.1982), *cert. denied,* 459 U.S. 916, 103 S.Ct. 231, 74 L.Ed.2d 182 (1982) (holding that the use of a trademark by a former franchisee following termination of a franchise agreement violates Section 43(a) of the Lanham Act); *S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 376 (3d Cir. 1992). *See also Dunkin' Donuts Inc. v. Gav-Stra Donuts, Inc.*, 139 F. Supp. 2d 147, 158 (D. Mass. 2001); *Two Men and a Truck/International Inc. v. Two Men and a Truck/Kalamazoo, Inc.*, 949 F. Supp. 500, 503-04 (W.D. Mich. 1996); *Burger King Corp. v. Majeed*, 805 F. Supp. 994, 1002 (S.D. Fla. 1992); *Little Caesar Enters., Inc. v. R-J-L Foods, Inc.,* 796 F. Supp. 1026, 1034-35 (E.D. Mich.1992).

Second, even assuming *arguendo* that a reasonable factfinder could conclude that the Stafford agreement were invalid, this would not provide Defendants with a free license to use Petland's marks as they did. Defendants assert that a failure of the franchise agreement means that all of Petland's claims fail. (Doc. # 73, at 1.) But the statutory and common law protections exist beyond the essentially co-extensive requirements and protections of the Stafford franchise agreement. *See Ramada Inns, Inc. v. Gadsden Motel Co.*, 804 F.2d 1562, 1566-67 (11th Cir. 1986) (treating franchisee's impermissible "holding over" of trademarks as statutory

16

infringement distinct from breach of franchise agreement, despite sharing some common elements). Defendants' remedy–if any remedy be warranted–for impropriety on the part of Petland is not to hold over or usurp Petland's protected marks.

The Court enters summary judgment in favor of Petland on the issue of liability only on Counts I, III, IV, VI, and VII. The issues of Defendants' willfulness and damages remain set for trial, and the Court expresses no opinion on these issues here.

### III. Conclusion

For the foregoing reasons, the Court **DENIES** as moot Petland's motion for leave to file a reply memorandum. (Doc. # 72.) The Court **GRANTS** summary judgment on Counts I, III, IV, VI, VII, X, and XI of the Amended Complaint and **GRANTS** summary judgment for Petland on Defendants' counterclaims. (Doc. # 67.) Petland's motion for summary judgment on Count IX of the Amended Complaint is held in abeyance. The Clerk is instructed to terminate the motion on the docket, subject to revival in regard to Count IX if the parties are not able to finalize their settlement discussions on this claim.

**IT IS SO ORDERED**.

                                                s/ Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE